IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RODERICK LESHUN RANKIN                                 PETITIONER

No. 5:06-CV-00228 JMM

LARRY NORRIS, Director,                                    RESPONDENT
Arkansas Department of Correction

ORDER

Petitioner filed a lengthy request for discovery in April of 2007 and respondent responded. [Docs. Nos. 14, 22 & 25]. On August 20, 2007, the court entered an order directing Petitioner to narrow his discovery requests. [Doc. No. 26].

Currently before the court is Petitioner's Amended Motion for Discovery [Doc. No. 29], Respondent's Response [Doc. No. 32] and Petitioner's Reply [Doc. No. 39]. Petitioner asserts that despite any procedural barriers, the court should allow him to conduct discovery. Respondent, claims that many of his claims are procedurally barred, and even if the claims are not barred, Petitioner has failed to show good cause for discovery on all of the requests.

Petitioner seeks an order from the court to conduct discovery and also requests the court issue subpoenas for the following items:

       1.        **Pine Bluff Police Department**

      a. *All documents pertaining to Petitioner's case.*

Petitioner claims that he has diligently sought all records from the police department in the instant case but records memorializing the collection of evidence and investigation of other suspects was not included in the file. Petitioner claims that the department stated that it "misplaced

1

the files or they were missing." Therefore, Petitioner seeks a court order to assure that all government agencies, including the police department, have turned over their complete files. Petitioner also requests any and all information the police department may have regarding his mental retardation.

> b. *All documents related to the murders of the Halfords and Zena Reynolds.*

Petitioner seeks these documents to develop his actual innocence claim.

> c. *All documents relating to the Demmings burglary.*

Petitioner has requested that the court issue a subpoena for the police department to provide him with the entire Demmings file. The Demmings file relates to a burglary that occurred a few days prior to the murders. The weapon that was used in the murders was allegedly taken from the Demmings home during that burglary. Petitioner claims that he requested the file from the police department but the file he received is not complete.

> d. *All documents relating to the murder of Petitioner's sister, Paula Rankin.*

Petitioner claims that the Pine Bluff Police Department claims that the homicide investigation is "still" open to avoid having to provide Petitioner with the file. Petitioner further claims that the file contains exculpatory information. He needs these documents to develop his actual innocence claim.

> e. *All files on Petitioner's step-father, Earl Trimble.*

Petitioner has requested these documents to develop his ineffective assistance of counsel and mitigation claims.

> f. *Any additional materials on his brother, Rodney Rankin.*

Petitioner claims these files are necessary to make his actual innocence claim.

g. *All files pertaining to Judge Fred Davis.*

Petitioner claims that these files are necessary to develop his ineffective assistance of counsel claim, unfair and biased trial judge claim and any other constitutional violations he may have suffered. Specifically, he claims that Circuit Judge Fred Davis suffered from bias and/or prejudice and could not fairly adjudicate Petitioner's trial because he was being prosecuted for crimes while he handled Petitioner's case. Petitioner's rights were allegedly violated because Davis was unable to be fair and was leaning towards the prosecution to receive favorable treatment in his own case. Davis was charged during Petitioner's post-conviction, Rule 37, process. Petitioner claims that he has requested the file but it has been reported as "missing" and the court must issue a subpoena to ensure Petitioner is receiving the complete file.

h. *All files pertaining to Shun Lungrell.*

Lungrell was referenced in a statement by a witness in the case as an individual that may have been the perpetrator. Petitioner seeks this information to develop his actual innocence claim.

i. *Any information related to Petitioner's mental retardation claim.*

Petitioner seeks this information to develop his claim that his confession was inadmissible and unreliable and made in violation of his constitutional rights as well as his actual innocence claim.

> j. *Any police regulations or standard operating procedures governing interrogation techniques in effect at the time of Petitioner's interrogation or relied upon by Detective Cooper at the time of the interrogation.*

Petitioner seeks this information to develop his claim that his confession was coerced, involuntary and unreliable and the use thereof was a violation of his constitutional rights.

2. <u>Deposition of Detectives</u>.

Petitioner has requested that the court enter a discovery order permitting Petitioner to depose the following individuals:

a. *Detective (now Lieutenant) James Cooper and Lieutenant Terry Hopson.*

Petitioner claims that the depositions of the detectives that interrogated him are essential to his actual innocence claim. Further, Petitioner claims his confession was false, unreliable, involuntary and inadmissible due to improper police methods and mental duress he suffered during the interrogation. The depositions of the two detectives will permit him develop his claim. Petitioner also seeks to depose Lieutenant Terry Hopson to determine whether payments were made to undisclosed informants in Petitioner's case. Petitioner claims that in an unrelated capital murder case in the same jurisdiction as his case, a file was requested and not bale to be located. At that trial, Lt. Hopson was able to recollect that a confidential informant was paid cash but the prosecuting attorney's office was not told such information because it was to remain a secret. Petitioner claims he must depose Lt. Hopson to determine whether information was withheld at his trial that would result in a constitutional violation.

3. <u>Jefferson County Prosecuting Attorney's Office</u>.

Petitioner has requested that the prosecutor's office turn over all of its files pertaining to the following:

a. *Judge Fred Davis.*

Petitioner again claims that Circuit Judge Fred Davis suffered from bias and/or prejudice and could not fairly adjudicate his trial and as a result his constitutional rights were

4

violated.

    b. *Earl Trimbell.*

Petitioner requests that the court order the prosecutor's office to provide him with all files of his step-father, Earl Trimbell, to develop his ineffective assistance of counsel and mitigation claims.

    c. *Shun Lungrell.*

Petitioner claims that Lungrell was named by a witness as the possible perpetrator in the murders. Now, petitioner requests any files on Lungrell to develop his actual innocence claim.

    d. *Information related to Petitioner; specifically, information not already disclosed related to his mental retardation, the prosecutor's notes on jury selection and any written policy, manuals or training materials on the selection of jurors.*

Petitioner claims that routine items are missing from his own file from the prosecutor's office. Based on counsel's experience and beliefs, Petitioner has request this court issue a subpoena to ensure that the entire file has been turned over.

    4.    <u>Jefferson County Circuit Clerk</u>.

    a. *Petitioner requests that the files of the Judicial and Disciplinary and Disability Commission pertaining to Judge Davis be produced.*

Petitioner has requested that this court issue a subpoena ordering the Circuit Clerk's office to produce this file. Petitioner attempted to retrieve the file but was told it was sealed. Petitioner claims that the file is not sealed and should be available and requests the court issue a subpoena.

> b. *All documents evidencing individuals selected to be on the venire at issue in Petitioner's case.*

Petitioner claims that there has been history of racial discrimination in the Jefferson County Prosecutor's Office and requests documents regarding the venire panel to develop his claims regarding an improper jury and *Batson* claims.

> c. *All of the names of individuals excused from reporting for jury service during Petitioner's trial.*

Petitioner claims that there has been history of racial discrimination in the Jefferson County Prosecutor's Office and requests documents regarding the venire panel to develop his claims regarding an improper jury and *Batson* claims.

> d. *All of the names of the individuals called to court to serve in Petitioner's case and the manner in which they were summoned.*

Petitioner claims that there has been history of racial discrimination in the Jefferson County Prosecutor's Office and requests documents regarding the venire panel to develop his claims regarding an improper jury and *Batson* claims.

> e. *The names of any persons who exercised discretion to arrive at the list of individuals called in Petitioner's case.*

Petitioner claims that there has been history of racial discrimination in the Jefferson County Prosecutor's Office and requests documents regarding the venire panel to develop his claims regarding an improper jury and *Batson* claims.

> f. *Produce the jury questionnaires that were used in Petitioner's case.*

Petitioner claims that there has been history of racial discrimination in the Jefferson County Prosecutor's Office and requests documents regarding the venire panel to develop his claims

6

regarding an improper jury and *Batson* claims.[1]

     5.     <u>Arkansas Department of Corrections</u>

*a. Lethal Injection Procedures: Petitioner requests that the ADC produce its procedures and protocol of lethal injection to be used by the State. That counsel is permitted to tour the execution chamber, take photographs and video footage of the chamber and lethal injection facilities, and any and all other materials related to the lethal injection procedure.*[2]

Petitioner claims that these above requested documents are necessary to prove that Arkansas' lethal injection procedure was unconstitutional. Respondent claims that pursuant to Ark. Code Ann. § 12-27-137(a)(12). Also, Respondent claims that the tour of the execution chamber will provide no information to support his current argument.

*b. Rodney Rankin: Petitioner requests that ADC and all records detailing the sizes of shoes and pants that were issued to former employee and Petitioner's brother, Rodney Rankin, and any and all records detailing the size of any shoes and pants issued to Petitioner since his incarceration.*

Petitioner claims that his brother committed the murders. Petitioner is allegedly taller, thinner and has larger feet than his brother Rodney. Petitioner seeks the shoe and pant size Petitioner's brother was issued from his former employer, the ADC, to develop his actual innocence claim.

---

[1] The Court notes that the jury questionnaires used in Petitioner's case are part of the record filed by Respondent in Doc. No. 10.

[2] Pursuant to his court's November 9, 2007, order, Petitioner's discovery request will be held in abeyance pending the United States Supreme Court's decision in *Baze v. Rees*, Case No., 07-5439 [Doc. No. 34].
    The court recognizes that Respondent has filed the ADC lethal injection policies and procedures in *Nooner v. Norris*, Case No. 5:06-CV-110, Doc. Nos. 73-74, Exhibit A.

7

6.     <u>Department of Human Services</u> (hereinafter DHS)

*All records and files concerning Paula Rankin.*

Petitioner claims that he has shown good cause for the court to order DHS to produce all its files related to his sister, Paula Rankin. He claims that the files have evidence of her abuse by their step-father and the evidence is necessary for his ineffective assistance of counsel and mitigation claims.

7.     <u>Jefferson County Juvenile Court</u>

*All records and files concerning Paula Rankin.*

Petitioner claims that he has requested that the Court order the Jefferson County Juvenile Court to produce any and all records it has regarding Paula Rankin. Again, Petitioner claims that demonstrated good cause and needs the documents for his ineffective assistance of counsel and mitigation claims.

8.     <u>Jefferson County Jail</u>

*All records detailing the size and shoes of any pants issued to Petitioner since his arrest for the murders in the instant case.*

Petitioner has requested this information to develop his actual innocence claim.

### Discussion

Petitioner asserts that he has demonstrated good cause to conduct discovery on all of his requests. Respondent contends that Petitioner has failed to show good cause and that many of Petitioner's claims are procedurally defaulted. However, a Petitioner may, in some circumstances, be allowed to present procedurally defaulted claims, such as when he is able to show cause and actual prejudice, or upon a showing of actual innocence. *Heffernan v. Norris*, 48 F.3d 331, 333 (8th

Cir. 1995). Actual innocence, as Petitioner is seeking evidence to show, is an avenue for a district court to reach procedurally defaulted claims it would ordinarily be unable to reach on the merits. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (finding that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). Moreover, the court has yet to reach the issue of procedural default of any of Petitioner's claims or whether the actual innocence claim presented by Petitioner is permitted. The evidence that may be discovered by Petitioner upon receiving the requested information may assist the Court in making these determinations. Discovery in a habeas proceeding is a matter confided to the discretion of the district court. See Fed. R. 6(a) Governing 28 U.S.C. § 2254 Cases; see also *Bracy v. Gramley*, 520 U.S. 899, 909, 138 L. Ed. 2d 97, 117 S. Ct. 1793 (1997).

There are times in which prehearing discovery is essential. The Advisory Committee Notes to Rule 6 approve the use of discovery in appropriate cases before an evidentiary hearing has been granted. Discovery at this point will allow facts to be presented to the Court to assist in the question of whether an evidentiary hearing is warranted and on what claims the Court will review on their merits. Furthermore, discovery should be liberally granted in capital cases. *McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in the judgment in part); accord id. at 855 (majority opinion).

Petitioner has made a sufficient showing of good cause for discovery of two of his discovery requests; specifically showing that if the facts are fully developed, he may be able to demonstrate that he is actually innocent of the crime, thus, ultimately entitled to relief. See *Bracy v. Gramley*, 520 U.S. 899 (1997). Upon due consideration, Petitioner's motion to conduct discovery to the

following two items is granted:

>1. The Arkansas Department of Corrections: All records detailing the sizes of shoes and pants issued to Rodney Rankin during his employment and of Roderick Rankin during his incarceration.
>
>2. Jefferson County Jail: All records detailing sizes of shoes and pants issued to Roderick Rankin.

The Arkansas Department of Corrections is ordered to provide Rankin's counsel the records detailing the sizes of shoes and pants issued to Rodney Rankin during his employment with the ADC. The ADC is also ordered to provide counsel with the records detailing the sizes of shoes and pants issued to Petitioner during his incarceration. The Jefferson County Jail is ordered to provide Rankin's counsel the records detailing the sizes of shoes and pants issued to Petitioner during his stay there. Further, Petitioner must retrieve the documents at his own expense and provide Respondent copies.

As for the remaining items, the request is DENIED. First, Petitioner has speculated that many of the requested documents exist or could be discovered. He admits that he has asked for many of the named documents from the requisite governmental agencies. Additionally, he provides that the agencies have provided him with the information they were able to locate. Without information indicating that additional files, or documents do exist or that the governmental agencies have not been completely forthright or acted in bad faith, the court cannot assume such. Mere speculation of government files does not require the court grant discovery. *See e.g.* United *States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986). Also, "a habeas proceeding is not a fishing expedition. *E.g., Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999)." *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007). The court's denial of

these discovery requests does not prohibit Petitioner from presenting evidence that additional files or data does, in fact, exist. Moreover, rather than this court issue subpoenas, Rankin may first seek production of many of these documents through the Arkansas Freedom of Information of Act. Ark. Code Ann. § 25-19-101 et. seq.

Second, pursuant to Arkansas Code § 9-27-352 and § 25-19-105, the documents from juvenile court and DHS must remain confidential and the court does not find release of the documents necessary.

IT IS SO ORDERED, this 9 day of April, 2008.

_____
United States District Judge