# IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

### THIS IS A CAPITAL CASE

**RODERICK LESHUN RANKIN**                                                    **PETITIONER**

**vs.**                                          **5:06-cv-00228-JM**

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                    **RESPONDENT**

### ORDER

1.   The Court previously determined Rankin is entitled to an evidentiary hearing on his procedurally defaulted ineffectiveness claims related to (1) alleged mental impairments and traumatic social history; (2) any involvement of Rankin's brother, Rodney Rankin, in the three homicides for which Rankin was convicted of three counts of capital murder and sentenced to death; and (3) penalty-phase instructions on mitigating circumstances.  The Court also found Rankin is entitled to an evidentiary hearing on actual innocence to excuse procedural default, and invited him to present argument and evidence on his *Atkins* claim.  *No. 176.*  In compliance with that Order, the parties filed a joint report with discovery requests and objections.  *No. 179.*  Rule 6(a) of the Rules Governing Section 2254 Cases provides for discovery under the Federal Rules of Civil Procedure in *habeas* proceedings if there is "good cause" for the requested discovery.  The parties' discovery requests are granted in part and denied in part.

2.   By agreement of the parties, any subpoena *duces tecum* granted herein is returnable to both parties.  And various entities to whom subpoenas are directed may raise an objection, if they believe the documents in their possession should not be produced because of privilege or privacy concerns.  Fed. R. Civ. P. 45(d)(2).

3.   Rankin's unopposed discovery requests are granted.  He may issue subpoenas *duces*

*tecum* to the Pine Bluff Police Department, Jefferson County Prosecutor's Office, and any other relevant law enforcement or prosecutorial agency, for records related to (1) the triple homicide, including any investigation related to Rodney Rankin; (2) the murder of Paula Rankin, a sister of Rodney and Rankin; and (3) the assault of Paula Rankin by Earl Trimble, the Rankins' step-father. Rankin also may issue a subpoena *duces tecum* to the Jefferson County Prosecutor's Office for records or information relating to Dr. Barry McDonald's evaluation of Rankin, or the prosecution's related consultation with Dr. McDonald.  Rankin also may depose Dr. McDonald.  Rankin's alternative requests—to serve on Payne a request for production of these records—are denied.

**4.**   Payne's unopposed discovery requests also are granted.  He may propound interrogatories asking Rankin to name the schools that he attended and the places that he was employed.  Payne also may issue subpoenas *duces tecum* to the following:  (1) Identified schools for Rankin's school records; (2) Identified places of employment for Rankin's employment records; (3) Southeast Arkansas Mental Health Center for records regarding Rankin's treatment; (4) Social Security Administration for Rankin's records; (5) Jefferson County Circuit Court, Jefferson County Sheriff's Department, and Pine Bluff Police Department for Rankin's records as a juvenile, including arrests, and subsequent criminal cases or juvenile-delinquency proceedings; (6) courts and law enforcement agencies for records related to Rankin's arrest and subsequent criminal case for an alleged assault of Sonyae Reynolds and another individual in San Marcos, Texas; (7) Gary Job Center in San, Marcos, Texas for records related to Rankin; (8) Arkansas Department of Human Services for files related to Rankin and family members—Rodney Rankin, Elaine Trimble, Earl Trimble, Herman Milton, and Theresa Trimble; (9) Pine Bluff Police Department for Rankin's criminal records, including but not limited to his June 1994 arrest for assaulting Reynolds, his arrest for theft by receiving, and the triple homicide; (10) Jefferson County Sheriff's

Office and Pine Bluff Police Department for Rodney Rankin's criminal records; (11) Pine Bluff

Police Department for records related to the murder of Paula Rankin; and (12) Pine Bluff Police

Department, Jefferson County Sheriff's Office, and Jefferson County Circuit Court for records

related to Earl Trimble's assault of Paula Rankin.

     **5.**  Payne objects to Rankin's broader request to issue a subpoena *duces tecum* to the Pine

Bluff Police Department and Jefferson County Prosecutor's Office, and any other relevant law

enforcement or prosecutorial agency, for all criminal records relating to Rankin and Rodney

Rankin.  While Payne contends the request is overly broad and lacking in specificity, he seeks the

same records.  On that basis and for good cause shown, Rankin's discovery request is granted.

Payne also opposes Rankin's request to issue a subpoena *duces tecum* to these same entities for

records related to the burglary of Ernest Demmings's home, which was linked to the triple

homicide.  And Payne objects to Rankin's request to issue subpoenas *duces tecum* to the Arkansas

Department of Human Services and Jefferson County Juvenile Court for records related to Paula

Rankin.  Payne's arguments in opposition summarily incorporate previous arguments and are

unclear.  In any event, Rankin's requests to issue the subpoenas *duces tecum* are granted for good

cause shown.

     **6.**  To the extent the parties' requests for discovery of the same material is granted, the

parties should co-ordinate their efforts in obtaining the material.

     **7.**  For good cause shown, both parties may depose any expert witness who will testify on

the other's behalf at the evidentiary hearing—after expert reports are disclosed.

     **8.**  Rankin's discovery requests related to locating the Pine Bluff Police Department's

purportedly missing investigation files on the triple homicide and related Demmings burglary  are

denied without prejudice.  Rankin may submit a follow-up request, if necessary.

**9.** Rankin requests leave to depose Lieutenant James Cooper of the Pine Bluff Police Department to ask about (1) evidence exculpating Rankin or inculpating Rodney Rankin in the triple homicide; (2) Cooper's conduct in interviewing Rankin; and (3) Pine Bluff Police Department interrogation policies, whether those policies were followed, and the contents of the unrecorded portions of Rankin's interrogation. Cooper, then a detective, interviewed Rankin about his involvement in the murders and heard his confession. Rankin asserts deposing Cooper could be helpful in proving actual innocence and ineffectiveness-of-trial-counsel for failing to appropriately challenge his confession. Cooper, however, extensively testified at the suppression hearing and at trial about the Rankin interview. Trial Record, Vol. 4, 1239–1318; Suppression Hearing 56–116. The *Trevino* hearing related to Rankin's confession, moreover, is limited to allegations of mental impairment and traumatic childhood. And Cooper testified that he was not involved in any investigation of Rodney Rankin. Suppression Hearing 101, 114. Because Rankin has not shown good cause for deposing Cooper, his discovery request is denied.

**10.** Rankin also requests leave to depose Detective Daniel Dykes of the Pine Bluff Police Department to ask about his investigation of the triple homicide and the Demmings burglary, specifically to ask if he discovered evidence undermining the case against Rankin or inculpating Rodney Rankin. Rankin notes the Pine Bluff Police Department has not located Dykes's report on the triple homicide, or the Demmings burglary file. He asserts deposing Dykes could be helpful in establishing actual innocence and ineffectiveness-of-trial-counsel for failing to investigate and present evidence that Rodney committed the murders. Dykes, however, testified extensively at trial and detailed his involvement in both investigations. Trial Record, Vol. 4, 1171–1231. He testified that his "part in [the triple homicide] investigation was strictly on the outlying edges." *Id.* at 1223. And he said that, based on the information available to him, "there was no way" that he

could establish Rankin committed the Demmings burglary. *Id.* at 1230–31.  Rankin has not established good cause for deposing Dykes.  His request is denied.

11.      Rankin's request to depose the Pine Bluff Police Department also is denied.  That request is overbroad and equivalent to a "fishing expedition."  *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000).

12.      Rankin's request to serve on Payne a series of requests for admission fares no better.  To the extent those requests properly could be served on Payne, they would require excessive explanation and qualification, or seek a conclusion of law on a disputed point.  Rankin's discovery request is denied.

13.      Payne seeks leave to issue subpoenas *duces tecum* to Rankin's trial lawyers, Gene McKissic and Jesse Kearney, and to his Rule 37 lawyer, Gerald Coleman, for production of records related to their representation of Rankin in state-court proceedings.  He alternatively requests leave to serve a request for production on Rankin for the same material, if the state-court lawyers are no longer in possession of these records.  And he asks to depose Rankin's trial and Rule 37 lawyers about their representation of him.

For good cause shown, Payne's request to serve a request for production and to depose is granted, as modified.  His request to issue subpoenas *duces tecum* is denied without prejudice. Rankin's present lawyers have or should be able to obtain the files of the lawyers who previously represented him. *See* Ark. R. Prof. Cond. 1:16(d); *Travis v. Supreme Court Committee On Professional Conduct.*, 2009 Ark. 188.  Rankin waived the attorney-client privilege when he challenged his lawyers' effectiveness. *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974). His waiver, however, is limited to materials related to hearing claims. *Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003) (*en banc*).  Rankin therefore is required to produce only file materials

5

relevant to the issues to be heard or litigated at the evidentiary hearing—to the extent the requested records are in his *habeas* lawyers' possession.  In light of Rankin's position that these files contain unrelated privileged material, he may compile a privilege log detailing any withheld material.  Fed. R. Civ. P. 26(b)(5).  He must provide the log, along with the produced material, to Payne.  If a dispute arises as to any withheld material, the Court may order copies of the disputed material be submitted *in camera* for review.  Likewise, the Court directs depositions must be limited to topics touching on these same hearing issues.

A protective order is appropriate.  Fed. R. Civ. P. 26(c).  The once-privileged file material and depositions may be used only in this proceeding.  *Bittaker*, 331 F.3d at 772–78.  The Court directs the parties to consult and submit to the Court a joint draft of a protective order.  To protect Rankin in the interim, the Court bars Payne and the State of Arkansas from using any information or material made available pursuant to this request in any proceeding other than this *habeas* proceeding.

**14.**     For good cause shown, Payne may issue subpoenas *duces tecum* to mental-health professionals—consulted or hired by Rankin, the State of Arkansas, or the circuit court in preparation for trial or Rule 37 proceedings—for their records related to Rankin.  These mental-health professions include the following individuals:  David Nanak, Dr. Phillip Caffey, Dr. William J. James, Dr. Philip Murphy (deceased), Dr. John Anderson, Dr. O. Wendell Hall, Marla Gergely, Cindy Slaughter, and Barry S. McDonald.  Rankin objects to these records being produced on the ground that the information is privileged.  The requested records, however, do not involve "confidential communications between a [mental-health professional] and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

6

Payne also may depose these same living individuals.   Because Dr. Murphy is deceased, Payne may serve a request for production on Rankin, seeking inspection and copying of Dr. Murphy's file in Rankin's possession.

15.    Payne has withdrawn his request to depose witnesses, who signed declarations submitted to Rankin's expert witnesses.

16.    Payne seeks to issue a subpoena *decus tecum* to McKissic for records relating to his representation of Rodney Rankin and Earl Trimble.  Payne also requests permission to ask during the deposition of McKissic about his representation of those clients and the effect, if any, on his representation of Rankin.  Payne says this discovery is necessary to defend against Rankin's hearing claim that McKissic's prior representations created a conflict of interest with his representation of Rankin.  Payne alternatively requests leave to serve a request for production on Rankin for the same material, if McKissic is no longer in possession of these records.  Rankin does not oppose the discovery request, but he recognizes McKissic and his former clients, or their representatives, may have an objection based on privilege.

"[I]t is well established under common law that confidential communications between an attorney and client are privileged and not subject to disclosure absent consent of the client." *United States v. Ivers,* 967 F.3d 709, 715 (8th Cir. 2020) (quotations omitted).  The privilege generally even survives the client's death. *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011).  The privilege, however, "protects only those disclosures—necessary to obtain informed legal advice —which might not have been made absent the privilege." *Ivers*, 967 F.3d at 716 (quotations omitted).  These protected communications encompass "information communicated on the understanding that it would not be revealed to others, and to matters constituting protected attorney work product." *In Re Grand Jury Proceedings,* 791 F.2d 663, 665 (8th Cir. 1986).  A client's

identity and "matters existing in the public eye" fall outside the scope of the attorney-client privilege. *Id.* McKissic's case files presumably contain mostly privileged information. Payne's request to issue a subpoena *decus tecum*, or serve a request for production, for these records is denied. Payne may generally depose McKissic about his representation of Rodney Rankin and Trimble, subject to the attorney-client privilege.

17.    Payne seeks to serve on Rankin a series of interrogatories asking about Rodney Rankin's alleged confession to him. Rankin's objections are not convincing. This Court granted a hearing on Rankin's argument that his actual innocence provides an avenue to overcome procedural default. In making that argument, Rankin relies, in part, on Rodney's purported confession to him. The proposed interrogatories are relevant and sufficiently specific to Rankin's claim of actual innocence to overcome procedural default. Payne's request is granted.

SO ORDERED this 20th day of April, 2022.


_____
JAMES M. MOODY, JR.
UNITED STATES DISTRICT JUDGE